# UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
OCT 27 2015
ARTHUR JOHNSTON
BY ______ DEPUTY

**CYNTHIA STRICKLAND,**

**Plaintiff**

**v.** Civil Action No. 5:15-cv-104 KS-MTP

**SHERIFF CHUCK MAYFIELD, THE ADAMS COUNTY SHERIFF'S OFFICE, THE CITY OF NATCHEZ POLICE DEPARTMENT, THE NATCHEZ- ADAMS METRO NARCOTICS AGENCY and JOHN DOES 1-10**

**Defendants**

## COMPLAINT
***Trial By Jury Requested***

COMES NOW the Plaintiff, Cynthia Strickland, by and through her counsel of record, and brings her Complaint for damages against the Defendants as follows:

## PARTIES

1. Plaintiff, Cynthia Strickland, is an adult resident citizen of Natchez, Adams County, Mississippi, with a mailing address of 2837 Little Street, Natchez, Mississippi 39120.

2. Defendant Sheriff Chuck Mayfield is the elected sheriff of Adams County, Mississippi, with an official physical and mailing address of 306 State Street, Natchez, MS 39120 where he can be served with process of the Court.

3. Defendant Adams County Sheriff's Office is a division of Adams County, Mississippi governed through the Board of Supervisors of Adams County, Mississippi and the Sheriff of Adams

County, Mississippi which may be served with process of the Court upon the president or clerk of the Board of Supervisors of Adams County, Mississippi at 314 State St, Natchez, Mississippi 39120.

4. Defendant the City of Natchez Police Department is a division of the City of Natchez, Mississippi which may be served with process of the Court upon Police Chief Daniel White at the physical address and mailing address of the Natchez Police Department of 233 D'Evereux Drive, Natchez, Mississippi 39120. Service of process may also be performed on the Mayor of the City of Natchez and/or the Board of Alderman of the City of Natchez, and/or the City Clerk for the City of Natchez.

5. Defendant, The Natchez-Adams County Metro Narcotics Unit is was created in 1987 and includes members of both the Adams County Sheriff's Office and the Natchez Police Department. Service of process may be had upon The Natchez Adams County Metro Narcotics Unit through service on the Adams County Sheriff's Office and the City of Natchez Police Department as also cited above.

6. John Doe defendants 1-10 are named herein in their individual capacities under fictitious names "John Does 1-10" because their true names, titles, capacities and/or level of responsibility for the acts alleged herein are unknown to Plaintiff at this time. Upon receipt of appropriate discovery sufficient to specifically identify these individuals, the Complaint will be amended accordingly. John Does 1-10 include, but are not limited to, officers of the Adams County Sheriff's Office, the Natchez Police Department or other agents or employees of the Metro Narcotics Unit.

**JURISDICTION AND VENUE**

7. This action is brought pursuant to *inter alia*, the Fourth, Fifth and Fourteenth

Amendments to the United States Constitution, 42 U.S.C. §1983 and other state and federal laws. This Court has jurisdiction over federal claims pursuant to the constitutional provisions enumerated and 42 U.S.C. §1983. This Court has jurisdiction over the supplemental state claims pursuant to 28 U.S.C. §1367.

8. Venue is proper in the Southern District of Mississippi pursuant to 28 U.S.C. §1391(b), in that the Defendants are located in this state and district and a substantial part of the acts and/or omissions giving rise to Plaintiff's cause of action occurred in this district.

## INTRODUCTION

9. On the date this Complaint is filed, the Defendants, through the Adams County Sheriff's Office (ACSO), continue to distribute a "news release" publishing allegations that, "...Sheriff Mayfield and Metro Agents Seize 80 Pounds of Synthetic Marijuana with a Street Value of $716,000.00." The press release that continues to be maintained by ACSO and accessed by anyone who visits the website maintained by ACSO is the same press release that was widely distributed to media outlets in November of 2014. In the press release, the Defendants claim that the Plaintiff was in possession of synthetic marijuana with intent to distribute when arrested by the Defendants on October 31, 2014.

10. On October 31, 2014, the Defendants actually seized 80 pounds of herbal tea. After the Plaintiff was searched, arrested and jailed, the Defendants realized their mistakes and withdrew all charges against the Plaintiff. Defendants did not print retractions in the media outlets, return the herbal tea that was seized or in any way seek to diminish the harm and damage inflicted upon the Plaintiff. In fact, they have continued to harm the Plaintiff on a daily basis.

**FACTS**

11. On October 31, 2014, the Plaintiff went to the United States Post Office (USPO) in Natchez, Mississippi to pick up packages mailed to her by her son.

12. Unbeknownst to the Plaintiff, the USPO employees had reported the packages to Defendants as "suspicious." The Plaintiff was told that delivery of the packages to her home had been attempted unsuccessfully and that she would have to come to the USPO to pick them up.

13. The packages contained organic damiana leaf and were labeled as to contents.

14. Upon arrival at the USPO, the Plaintiff was told she could wait in her car and the packages would be brought to her. After placing the packages in Plaintiff's vehicle, one of the Defendants told the Plaintiff there was a problem, identified himself as law enforcement and asked Plaintiff for permission to open the packages.

15. The Plaintiff gave permission and the Defendants stated that the packages contained synthetic marijuana.

16. The packages were not tested by Defendants prior to the Plaintiff giving permission for the packages to be opened. At all times relevant the Defendants were aware that the packages were in the possession and control of the USPO and could have been accessed for testing.

17. The Plaintiff was asked if she had other boxes at home she had picked up previously. She responded "yes" which was not unusual because the Plaintiff operated a part-time online business. Plaintiff told the Defendants that the packages were sent to her by her son, were not illegal and she asked them to call her son.

18. None of the Defendants called Plaintiff's son but instead took Plaintiff to her home which they searched. The Plaintiff was handcuffed, detained and taken to her home which was

searched as was the Plaintiff and her vehicle.

19. The search was partially destructive and several floral arrangements the Plaintiff had made for her daughter's wedding were destroyed and the Plaintiff's furniture was cut open in places.

20. The Defendants searched the Plaintiff's home and property - including multiple packages she received in her online business - none of which were illegal. Neither the Plaintiff nor her son had criminal records.

21. Defendants finally contacted Plaintiff's son during the search of her home by telephone because he was in Kuwait. He explained that the packages were herbal tea, ordered in bulk, for re-sale after being mixed with other tea varieties. Defendants refused to believe the Plaintiff or her son.

22. Upon information and belief, the contents of the packages were not tested by any of the Defendants prior to the Plaintiff's seach, the search of her home, the search of her vehicle, her detention, her arrest, her incarceration or the release of false statements to the press.

23. The Plaintiff was further detained, arrested and incarcerated until such time as she was able to obtain a release bond. Her car was impounded.

24. Thereafter, the Defendants caused to be issued and did issue press releases typified by those attached hereto as Exhibit "A," "B," and "C."

25. In addition, the Defendant ACSO placed the press release and the link to same on its webpage where ACSO has subsequently maintained the press release as it exists as Exhibit "D" for the past year.

26. Following the Plaintiff's release from jail and the release of false statements published in the local community and state-wide, one or more of the Defendants tested (or could be tested) the

contents of the packages and determined that the alleged "seizure of 80 pounds of synthetic marijuana" had been, in fact, a seizure of 80 pounds of perfectly legal herbal tea.

27. The charges against the Plaintiff were dropped after she retained counsel in the underlying alleged criminal matter.

28. Upon information and belief, the herbal tea that the Defendants alleged to be valued at $716,000.00 (but more realistically valued at $7,000.00) has not been returned to Plaintiff.

29. The Plaintiff's car was impounded on October 31, 2014 and was not returned until November 4, 2014.

30. No restitution of Plaintiff's destroyed property was ever attempted or provided.

## CAUSES OF ACTION

## COUNT I

### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983

### (General Allegations)

31. Plaintiff's realleges and incorporates herein by reference the allegations and forth in paragraphs 1-30 of this Complaint.

32. In committing the acts complained of herein, Defendants acted under color of state law to deprive the Plaintiff of certain constitutionally protected rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States including, but not limited to: a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; c) the right not to be deprived of property without due process of law; d) the right to be free from false arrest; and e) the right to just compensation for taking of property.

33. In violating the Plaintiff's rights herein, Defendants conducted an unreasonable search

and seizure of both the Plaintiff and her property which led directly to an unauthorized and warrantless arrest and incarceration of the Plaintiff.

34. As a direct and proximate result of the violation of her constitutional rights by the Defendants, Plaintiff suffered damages as alleged in the Complaint and is entitled to relief as provided by 42 U.S.C. §1983.

35. At all relevant times, the conduct of the Defendants was intentional and/or in reckless disregard and/or committed with such gross negligence as to equate with reckless disregard of the rights of the Plaintiff to the extent that punitive damages should be imposed.

**COUNT II**

**Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983**

**(Failure to Implement Appropriate Field Testing/Other Testing, Procedures and Policies)**

36. Plaintiff realleges and incorporates herein by referenced the allegations set forth in paragraphs 1-35 of this Complaint.

37. At all relevant times, Defendant Sheriff Chuck Mayfield, in his capacity as the Sheriff of the ACSO and the other Defendants in their individual and official capacities failed to implement or adopt reasonable policies and procedures with regard to testing of suspected narcotics to confirm that the suspected substances were, in fact, illegal before detaining, arresting and incarcerating the Plaintiff without lawful justification. Defendants likewise failed to implement or adopt reasonable procedures concerning press releases or the use of press releases/retractions.

38. At all relevant times, the Plaintiff was entitled to be free from unreasonable searches and seizures, the right to not be unlawfully detained or incarcerated, the right not to have her property seized and the right not to be deprived of her property without compensation for the unlawful taking.

39. At all relevant times, the Plaintiff was entitled to have her reputation in the community not be defamed, libeled or slandered by false statements from the Defendants.

40. Defendants failed to implement or follow reasonable procedures in the training of officers and the execution of law enforcement activities that led to Plaintiff's damages herein including, the failure to obtain a search warrant of the suspected packages; failure to test the contents of the packages to confirm that they contained synthetic marijuana; the failure to adequately inform the Plaintiff of her rights before obtaining consent to open the packages; failing to test the contents of the packages after the Plaintiff provided voluntary consent to open the packages; the failure to test the content of the packages prior to arresting and incarcerating the Plaintiff; the failure to adequately advise the Plaintiff of her rights before searching her home and property and violating her other civil liberties; the failure to perform any testing of the contents of the packages prior to preparing press releases for multiple media outlets claiming credit for the alleged seizure of over $700,000.00 of illegal synthetic marijuana; failing to immediately report to the media outlets that the original reporting was false upon finally testing the contents of the packages and determining that they did not contain any illegal substances; failure to return illegally seized and improperly seized property; failing to compensate the Plaintiff for improperly seized or destroyed property; failing to remove hyperlinks and other information concerning the false and defamatory reporting from the website(s) maintained by the Defendants for at least a year following the false reporting; and improperly seizing and impounding Plaintiff's vehicle and destroying Plaintiff's personal property.

41. As a direct result of this reckless and indifferent conduct including the failure to implement policies and utilize reasonable practices, the Plaintiff suffered damages including the loss of liberty and property all entitling her to relief under 42 U.S.C. §1983.

## COUNT III

**Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983**

**(False Arrest/False Imprisonment)**

42. Plaintiff realleges and incorporates herein by referenced the allegations set forth in paragraphs 1-41.

43. At all relevant times, the Defendants, acting as alleged to be in the course and scope of their employment by falsely arresting and detaining the Plaintiff with no basis in law or in fact to detain and arrest her.

44. At all relevant times, the Plaintiff was entitled to her rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States to be free from false arrest and false imprisonment and Defendants violated her rights in both detaining and arresting her and falsely imprisoning her without legal cause proximately causing Plaintiff's damages herein.

## COUNT IV

**Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983**

**(Defamation)**

45. Plaintiff realleges and incorporates herein by referenced the allegations set forth in paragraphs 1-44.

46. At all relevant times, the Plaintiff was entitled to enter into a United States Post Office to pick up property addressed to her. At no time was the Plaintiff committing any illegal act. The Plaintiff was unlawfully detained, searched, her property was searched, she was arrested, she was humiliated, she was terrified, she was incarcerated - all without having committed any state or federal crime.

47. The Defendants failed to test the contents of the packages at issue prior to the Plaintiff's imprisonment or prior to the time the Defendants elected to publish to various media outlets for further publications locally, statewide and nationally. The defamatory stories are typified in the exhibits to this Complaint.

48. As a direct and proximate result of the defamation, the Plaintiff has suffered injury to her reputation as a result of the Defendants' false statements. Moreover, the Plaintiff has suffered additional alteration of her status and rights as a direct result of the defamation and the Defendants have continued to deprive the Plaintiff of her property and have continued to maintain the false statement for access on one or more of the Defendants' websites.

49. The harm the Plaintiff suffered as a result of the initial publication of false statements could have been and should have been partially mitigated by the publication of retractions issued to the same media outlets approached for initial publication. An admission from the Defendants that the Plaintiff had been falsely and mistakenly arrest and that all charges had been dropped would have been necessary to prevent the Plaintiff from suffering additional loss of status in the community. The Defendants' decision not to print retractions but to instead treat the arrest as if it were valid and continue to claim credit for both the seizure of allegedly illegal synthetic marijuana as a "drug bust" or claiming, "...this is a major bust and result of the cooperation of agencies. This cooperation is essential in the fight against drugs," has and continues to proximately harm the Plaintiff. Moreover, the Defendants, in an effort to avoid having to admit the falsity of the Plaintiff's arrest and imprisonment have never returned the Plaintiff's property. As a result, Plaintiff has forfeited both her property interest as well as having the stigma of loss of standing in the community and loss of reputation. The Plaintiff has also suffered stigmatization and has been refused service in the

community as a result of her alleged criminal activity due directly to the action of the Defendants both in falsely defaming the Plaintiff and maintaining the false statements in the community. The Plaintiff has also suffered the loss of income due to her inability to continue her on-line business as a direct result of Defendants' actions. The deprivation of the Plaintiff's property harm to her health and other altered status coupled with the defamatory conduct of the Defendants entitles the Plaintiff to relief under 42 U.S.C. §1983 as it was a proximate cause of her harm.

## COUNT V:

**False Arrest**

**(State Law Claim)**

50. Plaintiff realleges and incorporates herein by referenced the allegations set forth in paragraphs 1-49 of this Complaint.

51. The Defendants intentionally and falsely arrested the Plaintiff in an unlawful and grossly negligent manner without probable cause. At all relevant times, the conduct of the Defendants was unreasonable and was based on unfounded suspicion and conjecture as opposed to probable cause. At all relevant times, the Defendants had the means available to them, prior to the Plaintiff's arrest - and with the Plaintiff's permission - to test the contents of the packages they believed to be synthetic marijuana. Rather than take this reasonable and responsible step - either with or without the Plaintiff's permission, which was freely given but could have also been circumvented through Court order - the Defendants relied on assumptions and conjecture and proceeded in reckless disregard of the rights of the Plaintiff leading to her false arrest which was the proximate cause of the Plaintiff's damages herein. At all relevant times prior to Plaintiff's arrest the packages were in the custody and control of the USPO and ample opportunity to test the packages existed.

**COUNT VI:**

**Malicious Prosecution/False Imprisonment**

**(State Law)**

52. Plaintiff realleges and incorporates herein by referenced the allegations set forth in paragraphs 1-51 of this Complaint.

53. The Defendants caused the arrest and initiated the prosecution of the Plaintiff without probable cause. Rather than pursue the reasonable and responsible step of confirming that the packages in question were in fact illegal, the Defendants incarcerated the Plaintiff requiring her to post bond to obtain her release. The Defendants subsequently determined that they had falsely and improperly arrested and imprisoned the Plaintiff and dismissed the charges representing a termination of the proceedings in the Plaintiff's favor but not before the Plaintiff suffered injuries and damages as a proximate result of the arrest, prosecution and imprisonment.

**COUNT VII:**

**Intentional and Negligent Infliction of Emotional Distress**

**(State Law)**

54. Plaintiff realleges and incorporates herein by referenced the allegations set forth in paragraphs 1-53 of this Complaint.

55. The conduct of the Defendants at all relevant times was wanton, willful, outrageous, and foreseeable to cause the Plaintiff harm so as to represent intentional infliction of emotional distress. The Plaintiff was cooperating with the Defendants and completely unaware of why she was being searched, detained, arrested or incarcerated. Likewise, the Plaintiff cooperated with the Defendants in the search of her home despite being humiliated, handcuffed, terrified and in a state of

shock. The infliction of such distress on the Plaintiff was easily avoided with minimal investigation or concern for the Plaintiff's rights. Defendants have continued to cause the Plaintiff emotional distress by refusing to print retractions and by keeping the false news reporting on the websites. Defendant have continued to cause Plaintiff stress by not returning or compensating her for the loss of her property. To the extent that the infliction of emotional distress by the Defendants was not intentional or is not deemed to have been intentional, such infliction of distress was negligent and in direct violation of duties owed by the Defendants to the Plaintiff. Such infliction of distress, whether intentional or negligent, was the proximate cause of Plaintiff's injuries and damages.

**COUNT VIII:**

**Assault and Battery Claim**

**(State Law)**

56. Plaintiff realleges and incorporates herein by referenced the allegations set forth in paragraphs 1-55 of this Complaint.

57. At all relevant times, the agents of the Defendants committed acts intending to cause harmful or offensive contact with the Plaintiff and to place the Plaintiff in immediate and imminent apprehension of such contact. The Plaintiff was subjected to assault in that she feared contact by the agents of the Defendants and then actually suffered battery through contact by Defendants as she was handcuffed, placed in law enforcement vehicles, incarcerated and otherwise subjected to assault and battery.

**COUNT IX:**

**Defamation of Character**

58. Plaintiff realleges and incorporates herein by referenced the allegations set forth in

paragraphs 1-57 of this Complaint.

59. The Defendants caused various press releases to be issued to media outlets containing false and defamatory statements concerning the Plaintiff. At all relevant times, the statements were made to third parties in a negligent fashion with knowledge that the information was false or in reckless disregard of whether or not the knowledge was false. At all relevant times, the Defendants had the ability and the reasonable means to determine the truth or falseness of their claim and at the time of publication to third parties, had ample time to have determined that the items seized were not in fact illegal and that the Plaintiff's arrest was not legitimate. The statements made about the Plaintiff injured her reputation, exposed her to public contempt and ridicule, degraded her in society, lessened her in public esteem and lowered her in the confidence of the community. The defamatory statements were clear and unmistakable and caused severe harm and damage to the Plaintiff.

60. Defendant ACSO has continued to defame the Plaintiff on a daily basis through its website providing a link to the fase new story. The Defendants have negligently and intentionally failed to print retractions in any media outlets, all causing harm to the Plaintiff.

**NEGLIGENCE (STATE LAW) AND §11-46-11, *ET SEQ. MISS. CODE ANN.***

61. Plaintiff realleges and incorporates herein by referenced the allegations set forth in paragraphs 1-60 of this Complaint.

62. Plaintiff affirmatively asserts satisfaction of §11-46-11 *Miss. Code Ann.*, Notice of Claim Requirements, pursuant to the appropriate notice provided and attached hereto as Exhibit "E." Moreover, Plaintiff affirmatively asserts that Defendants are not entitled to complete or qualified immunity under state or federal law for the conduct alleged herein because the acts and omissions of the Defendants, through their employees, although performed under color of state law were not

related to police protection as no crime was being committed and the actions of the Defendants' employees were committed in reckless disregard of the safety and well being of the Plaintiff who was not engaged in any criminal activity at the time she was originally injured herein or as she has continued to be harmed by Defendants thereafter. As noted above, minimal investigation and effort would have revealed the falsity of the Defendants' assumptions and accusations and the impropriety of the detention, treatment, arrest and incarceration of the Plaintiff.

63. The actions of the Defendants were additionally reckless in that they were reduced to press releases and availability of "media kits" where the false statements about the Plaintiff as well as the allegations that the packages contained synthetic marijuana were distributed to third parties including the media, the press and the public at large. Moreover, the Defendants had ample and reasonable time to determine the falsity of the statements prior to releasing the information to the media as simple testing revealed the falsity of the statements and the packages were in the possession of the USPO. Despite learning of the falsity of the statements and determining that the charges against the Plaintiff should be dismissed, Defendants did not contact media outlets or publish a retraction. Rather, the Defendants continued to maintain and utilize the press releases - with full knowledge of the falsity of same, on websites, including the website of the Adams County Sheriff's Office for a period of approximately one (1) year from the time knowledge of the falsity was available. Such conduct is entirely reckless and does not qualify for immunity and has no nexus or connection to reasonably competent police work in or out of the scope of employment or course of employment and is in no event is such conduct entitled to immunity under Mississippi law. To the extent Defendants claim such immunity it should be, and is, preempted by federal law as stated herein

**DAMAGES**

64. As a direct and proximate result of the actions of the Defendants as described above, the Plaintiff has suffered the following damages:

(a) emotional distress and mental anguish, including depression and anxiety, past, present and future;

(b) medical expenses, past, present and future;

(c) loss of property;

(d) loss of reputation and standing;

(e) loss of use of her property;

(f) financial harm through attorney fees, bond, loss of business revenue;

(g) attorney fees and costs, including expert fees;

(h) all other relief afforded under 42 U.S.C. §1983;

(i) punitive damages;

(j) all other general and specific relief to which she is entitled.

65. In addition, the actions of the Defendants were sufficiently outrageous to warrant the imposition of punitive damages under Mississippi laws.

**AD DAMNUM**

WHEREFORE, PREMISES CONSIDERED, the Plaintiff seeks judgement from the Defendants in an amount within the jurisdictional requirements of this Court and sufficient to compensate the Plaintiff for all of her damages caused by the conduct of the Defendants. Finally, Plaintiff requests a jury trial and all other appropriate and available relief.

Date: October 21, 2015

RESPECTFULLY SUBMITTED,

CYNTHIA STRICKLAND, PLAINTIFF

BY: ______________________________

Craig R. Sessums, Esq. (MSB No. 10184)
Funderburg, Sessums & Peterson, PLLC
P.O. Box 13960, Jackson, MS 39236
Email: csessums@fsplawfirm.com
Tel. (601) 355-5200
Fax (601) 355-5400